UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **JOHN BRANDT,** | : | Civil Action No.: 10-4944 (FLW) |
| Plaintiff, | : | |
| v. | : | ORDER |
| **ELIZABETH HOGAN, et al.,** | : | |
| Defendants. | : | |

This matter having come before the Court on a Motion by *pro se* Plaintiff John Brandt ("Plaintiff") to appoint the United States Marshal to serve the Amended Complaint [dkt. entry no. 8], returnable October 17, 2011; and the Court noting that after screening Plaintiff's original Complaint, in an Order dated May 31, 2011, "Plaintiff's claims...against...Defendants Elizabeth Hogan ("Hogan"), Patricia Foundas ("Foundas"), Benito Marty ("Marty"), Reed Gladey ("Gladey"), and Sasikala Pasupuleti ("Pasupuleti") (collectively, "Defendants")" were allowed to proceed and Plaintiff's claims against the remaining defendants named in the Complaint, including John Main ("Main"), Jonathan Poag ("Poag"), and Jennifer Velez ("Velez"), were dismissed without prejudice, based upon Plaintiff's failure to allege their personal involvement (*see* dkt. entry no. 4); and the Court noting that Plaintiff filed an Amended Complaint on June 16, 2011 that included Main, Poag, and Velez in addition to Defendants (*see* dkt. entry no. 6); and the Court noting that in the Amended Complaint, Plaintiff alleges that Main, Poag, and Velez, among others, "are responsible for implementing, promulgating, creating, or possessed responsibility for the continued operation of the hospital policy that has systematically confined Plaintiff to a jail cell throughout the day and night", that they "are aware that this hospital policy infringes on the rights of *Krol* status persons' and regular civil commit[ment's] rights not to be arbitrarily restrained or secluded", that they have

"continued the operation of a hospital policy by advice, consent, participation, and approval which deprives patients of their right to freedom of movement by secluding them arbitrarily to a jail cell...[despite the fact that] there is no legitimate budgetary restraints [and the fact that] affording involuntary committed civil patients to the fundamental constitutional right of freedom of movement could be easily implemented without costing to[o] much or being to[o] much of a burden" (Pl.'s Amended Compl., dkt. entry no. 6 at ¶¶ 46-47); and the Court noting that although service of the original Complaint (*see* dkt. entry no. 1) was effected on Defendants on September 12, 2011 (*see* dkt. entry no. 7), to date Defendants have not filed a responsive pleading; and the Court noting that pursuant 28 U.S.C. § 1915(d), in cases where a party is proceeding *in forma pauperis*, "[t]he officers of the court shall issue and serve all process"; and the Court noting that pursuant to FED. R. CIV. P. 15(a)(1), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier"; and the Court noting that pursuant to FED. R. CIV. P. 15(c)(1), "[a]n amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back, (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading, or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied..."; and the Court noting that "[d]ue process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed" (*Foucha v. Louisiana*, 504 U.S. 71, 79 (1992) (*citing Jones v. United States*, 463 U.S. 354, 368 (1983); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)); *see also*

*Youngberg v. Romeo*, 457 U.S. 307, 324 (1982); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)); and the Court noting that involuntarily committed mentally retarded persons retain substantive liberty interests in adequate food, shelter, clothing, and medical care (*Youngberg*, 457 U.S. at 315) as well as in safety, freedom of movement, and minimally adequate or reasonable training to ensure safety and freedom from undue restraint (*Id*. at 317-19); and the Court noting that these interests, however, are not absolute (*Id*. at 319-20) because "[i]n determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society'" (*Id*. at 320 (*quoting Poe v. Ullman*, 367 U.S. 497, 542 (1961)); and the Court noting that in seeking this balance, it must weigh "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty" (*Id*.) where "the Constitution only requires that the courts make certain that professional judgment in fact was exercised" as "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made" (*Youngberg*, 457 U.S. at 321); and the Court noting that even when treatment decisions violate a protected liberty interest, such decisions made by a qualified professional are presumptively valid and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment", although "[i]n an action for damages against a professional in his individual capacity, however, the professional will not be liable if he was unable to satisfy his normal professional standards because of budgetary constraints" because "good-faith immunity would bar liability" (*Youngberg*, 457 U.S. at 323); and the Court noting that other liberty interests may be created by state law (*see Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *see also Asquith v. Department of*

*Corrections*, 186 F.3d 407, 409 (3d Cir. 1999)) and that the State of New Jersey has enacted legislation providing that every individual who is mentally ill is entitled to fundamental civil rights and to medical care (*N.J.S.A*. 30:4-24.1) by way of a "bill of rights" for civilly-committed mental patients, which includes the rights to be free from physical restraint and isolation, to the least restrictive conditions necessary to achieve the purposes of treatment, to privacy and dignity (*N.J.S.A*. 30:4-24.2), and liberty interests in treatment in the least restrictive conditions necessary to achieve the purposes of that treatment (*see, e.g., Scott v. Plante*, 691 F.2d 634, 639 (3d Cir. 1982) ("At least since the passage of N.J.Stat.Ann. 30:4-24.1 in 1965, and those cases which interpret this provision, the state has an affirmative obligation to treat those mentally ill individuals who are committed to its institutions. Each patient is also entitled to 'the least restrictive conditions necessary to achieve the purposes of treatment.'"); *see also Matter of Commitment of J.L.J.*, 196 N.J. Super. 34 (N.J.Super. App. Div. 1984) (holding that *N.J.S.A*. 30:4-24.2(e)(2) creates a liberty interest in "least restrictive" conditions subject to due process protection), *cert. denied*, 101 N.J. 209, 210 (1985); *N.J.S.A*. 30:4-27.1 (setting forth the legislative findings regarding the State's responsibility to provide care, treatment, and rehabilitation services to mentally ill persons who are disabled); and the Court noting that Plaintiff was granted *in forma pauperis* status on May 31, 2011 (*see* dkt. entry no. 4); and the Court noting that Plaintiff's Amended Complaint was filed prior to the date service of the original Complaint was effected (*see* dkt. entry nos. 6 & 7); and the Court, having reviewed the original Complaint and the Amended Complaint (*see* dkt. entry nos. 1 & 6), finding that Plaintiff's allegations in the Amended Complaint against Main, Poag, and Velez sufficiently remedy the deficiencies found in Plaintiff's original Complaint – alleging that Main, Poag, and Velez are aware that isolation for no medical or legal reason is unconstitutional, that they created, implemented,

4

promulgated, or have responsibility for continued operation of the hospital policy of unjustified isolation, and that they continued the policy by their own personal advice, consent, participation, and approval for reasons beyond therapeutic need or budgetary constraint – so as to state a claim which may proceed (*see* dkt. entry no. 6 at ¶¶ 46-47); and the Court having reviewed the Plaintiff's written submission; and the Court having considered the matter pursuant to FED. R. CIV. P. 78; and for the reasons stated above;

**IT IS** on this 12th day of October, 2011,

**ORDERED** that Plaintiff's Motion to appoint the United States Marshal to serve the Amended Complaint [dkt. entry no. 8] is **GRANTED** as to Hogan, Foundas, Marty, Gladey, Pasupuleti, Main, Poag, and Velez.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**